McCLAIN v. ORTMAYER et al.

(*Circuit Court, N. D. Illinois.* January 9, 1888.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—HORSE-COLLARS.
    In an action for infringement of a patent, the claim charged as infringed was for a hook formed of elastic wire, with a safety-pin integral with the hook for attaching it to pads for sweat or horse-collars. *Held,* that the use of a hook, fastened to a piece of leather, so as to give an axial motion, and the leather fastened to the pad by means of rivets, was no infringement.

2. SAME—NOVELTY—COMBINATION.
    A patent obtained upon a device, upon which a patent had already been obtained, in combination with another exactly similar but unnecessary device, which it required no invention to dispense with, there being no material difference in the mode of operation and result, presents no patentable novelty, and for that reason is void.

In Equity. On bill for injunction.

Bill by plaintiff, Edward L. McClain, to restrain defendants A. Ortmayer & Son and others from the infringement of letters patent owned by plaintiff.

*Peirce & Fisher* and *James Moore*, for complainant.

*Banning & Banning*, for defendants.

BLODGETT, J. The bill in this case seeks to restrain the alleged infringement of letters patent No. 259,700, granted to complainant January 20, 1882, for a "pad for horse-collars;" patent No. 267,011, granted to complainant, November 7, 1882, for a "pad for horse-collars;" and patent No. 298,626, granted May 13, 1884, to John Scherling and L. D. Randall & Co., for a "pad fastening for horse-collars," which last letters patent complainant now holds by assignment. All these patents relate to devices for fastening the pad to a horse-collar, the pad being a sort of cushion, made of soft cloth, stuffed with hair, to be interposed between the collar and neck of the horse, used mainly for heavy draft harness, the pads themselves are admitted to be old, and these patents have only to do with contrivances for fastening them to the collar.

The first patent covers a fastening consisting of two elastic steel hooks, fixed firmly by rivets to the pads, with the hooks so adjusted that one clasps the front roll or wale of the collar, while the other hook clasps the after roll of the collar; the hooks being of elastic material, set so as to firmly grip or clasp the rolls of the collar, and thus keep the pad in place, and, by reason of the elasticity of the springs, the pad, while held properly in place, is readily detachable from the collar. This patent contains two claims, but infringement is charged only as to the first, which is in these words: "As attachments to a sweat or other horse-collar pad, the elastic springs, *s, s,* substantially as described, and for the purpose set forth."

The second patent shows a device similar in all respects to the first, except that only one elastic hook is used, which is so arranged as to clasp the fore roll of the collar, the hook for grasping the back roll of the collar being dispensed with. This patent contains two claims; infringement is charged as to both. These claims are as follows: (1) "As an attachment to a horse-collar pad, or other harness pad, and as adjustably attaching a pad to a horse-collar, or other part of harness, the elastic single-roll, or single-curved spring, S, constructed, arranged, attached, and operating substantially in the manner shown or described, and for or with the purposes set forth." (2) "The combination, with a horse-collar pad, of the elastic single-roll or single-curve spring, S, substantially in the manner shown or described, and for the purposes set forth."

The third patent covers a single safety-pin and hook, so constructed that the shaft of the pin is thrust into the soft material of the pad, and its point secured in the safety-lock, while a bow or hook springing from the guard of the pin is clasped over the fore roll of the collar, substantially in the same way shown in the McClain second, or single-hook patent; the only difference being that in McClain's second patent, the hook is riveted to the pad, while in the Scherling patent the hook is pinned

to the surface of the pad. Infringement is charged of the first claim of this patent, which is: "The described safety-pin and hook, formed of wire, consisting of the bows, *b*, *b*, and the part, *a*, connecting the bows with suitable integral devices for attachment to the collars formed upon the ends of the bows, substantially as described."

The defenses are: (1) That defendants do not infringe either patent. (2) That the two last-mentioned patents are void for want of novelty.

The defendants use a strong, stiff wire hook, fastened to a stiff piece of leather, which is riveted to the pad, and adapted to clasp the front roll only of the collar, depending for its ready connection with and grip of the collar rather upon the yielding nature of the collar than the elasticity of the hook. Although there is undoubtedly some elasticity in the wire from which defendants' hook is made; yet it is manifest that the hook is intended to operate by forcing the collar-roll into the throat of the hook instead of opening a light flexible spring, and snapping it around the collar-roll, as would be done in applying the spring shown in either of the McClain patents.

As to the first of these patents, I think there can be no doubt that the first claim, and for that matter both claims, requires the use of the double springs, *s*, *s*, one arranged to grasp the front, and the other the back roll of the collar. The claim is for the attachment of these springs, *s*, *s*, to a horse-collar pad. The patentee says in his specifications:

"One end of a spring is so curved as to partly encircle the fore wale or small roll of the collar, and to hug it so closely as to keep out of the way of the hame, and the other end is so curved as to similarly partly encircle and hug the after wale, or body side of the collar, and yet not interfere with the hame."

Here he describes two hooks or elastic springs for the purpose of attaching the pad to a horse-collar, and claims this device as his invention. A study of the specifications of this patent also shows, I think, very clearly, that the patentee intended to use hooks which should depend mainly for their operation on their quality of elasticity. Now, as the defendants use only one hook, and that not dependent on its elasticity for its effective operation, as I think a stiff hook of cast or malleable iron would work as well as defendants' wire hook, it is clear to me that they do not infringe the first claim of this patent. It was urged on behalf of defendants upon the argument that this first claim is baldly for the elastic springs, *s*, *s*, and that the words "as attachments to a sweat or other horse-collar pad" are surplusage, on the ground that an inventor is entitled to all the uses to which his invention is applicable, (*Roberts* v. *Ryer*, 91 U. S. 157;) and that this claim, not being for a combination of the springs, *s*, *s*, with the collar-pad, is for the springs alone. This claim may be subject to this construction, but I do not base my opinion upon this view of it, as it is palpable to my mind that the claim only covers the two springs, *s*, *s*, when used together to fasten a pad to a horse-collar, and that the use of one spring is not an infringement. In fact the complainant must, I think, be held to have admitted that his first patent required two springs by his subsequent application for a patent on his single-hook attachment.

The second patent is for the elastic single-curve spring, S, constructed and arranged so as to clasp only the fore roll of the collar. It in no respect differs in construction, mode of operation, and result from the spring shown in the first patent, which was intended to encircle and hug the fore roll of the collar. In other words, the patentee has cut the two springs of his first patent apart, rejected the one intended to clasp the back roll of the collar, and taken a new patent upon the single spring or hook which fastened the pad to the fore roll of the collar in the first patent. Undoubtedly, experience in the use of the device covered by the first patent showed that the back fastening was practically unnecessary; that in use the pad was held sufficiently in place by the fore fastening, and that the back fastening, if not a hinderance and objection, could at least be dispensed with. But it did not require invention to reject this useless or superfluous back fastening, and rely only upon fastening to the fore roll of the collar. Any teamster who had become tired of applying the two hooks, where one was all that he deemed necessary, could have broken off the back hook to save himself needless trouble, and used only the fore hook. This patent comes directly within the principle stated by this court in *Stow* v. *City of Chicago*, 8 Biss. 47, 3 Ban. & A. 91, where it was said:

"A reconstruction of the machine so that a less number of parts will perform all the functions of the greater may be invention of a high order, but the omission of a part, with a corresponding omission in function, so that the retained parts do just what they did before in the combination, cannot be other than a mere matter of judgment, depending upon whether it is desirable to have the machine do all or less than it did before."

In his first patent, McClain provided fastenings to the front and rear rolls of the collar. He found by use that the front spring alone was a sufficient fastening for practical purposes, and there was, therefore, no invention in omitting the rear spring from his device, and using the front spring alone to perform the same functions it did in the first patent. It is true that when only the forward spring is used, it enables the person using the pad to fix its location on the collar more readily than when two springs are used, as in that case the two must be so located as to enable both springs to clasp their respective rolls of the collar, and, as the rolls of the collar diverge, the double spring could fix the pad only at one place on the collar; but the convenience that may follow this use of this front spring alone, does not give to this front spring any new function or feature. In other words, it was nothing but a convenient mechanical adaptation of this first patent to the uses for which it was designed to cut off one of these springs when experience had shown the back one was not necessary. The single spring shown in the second patent does not do all that was done by the two springs in the first patent, but it does enough for practical purposes. Mr. McClain having by his claim and specifications clearly limited himself by his first patent to the two springs used together as shown, I do not think there was any patentable novelty in dispensing with one of these springs; and hence conclude that the second McClain patent is void for want of novelty.

In regard to the Scherling patent, as already stated, it shows a common and well-known safety-pin, combined with a hook of the same material, and integral with the pin, the material being elastic wire, so that the hook may be secured or fastened to the pad by means of the pin, and the pad then attached to the collar by clasping the hook over the fore roll of the collar.. The drawings and specifications show two forms of this device. In Figs. 1, 4, and 5 of the drawings, the safety-pin is shown, and in Figs. 2 and 3 the hook is attached to the pad by pins inserted in the texture of the pad, with no safety-loop or lock to hold the pin in place. The proof shows that safety-pins, with hooks integral with the pins, are much older in the art than the Scherling patent. They are shown in the English patent of Montelart of February, 1864; in the American patent of Moore of March, 1869; in the American patent of Marston, January, 1872; in the American patent of Jenkins, August, 1880; in the American patent of Judd, March, 1882; while the Canadian patent to McClain, the complainant in this case, of July, 1883, shows a pad fastened to a horse-collar by a wire hook fastened to the pad by inserting therein a pin integral with the hook. The only difference that I can perceive between this patent and the two McClain patents, is that this device, especially in the safety-pin form, gives an axial movement of the hook; but it seems to me that McClain had in view some mode of attaching the hook to the surface of the pad, similar in its action and result to that obtained by the Scherling pin and hook. In both his patents McClain says in substance that he would not deviate from his patent to fasten his springs to a surface piece, and then fasten such surface piece to the surface of the material of the pad by stitching; and it will readily be seen that by so doing some flexibility between the pad and hook would be secured, for, the surface of the pad being of cloth, quite a free movement of the hook back and forth would be obtained from the looseness and flexibility of the cloth. But without saying that McClain anticipated Scherling in this particular, I am satisfied that with safety-pins and hooks combined as shown in the Jenkins and Judd patents, there was no room for invention in substituting a safety-pin and hook, such as are shown in the Scherling patent, for the single hook or spring shown in the McClain patent of 1882. While McClain says in his single hook patent that he expected in practical operation to fasten his hook to the pad by means of rivets, yet at the same time, as he does not confine himself specifically to that mode of fastening, I apprehend that any mode by which the spring could be fastened to the pad, and secure the result intended to be secured by the patented device, would be allowable and open to McClain. Hence, if in the device covered by his single-hook patent McClain found that it was better, on the ground of economy, or for any other reason, to fasten the hook, or spring as he calls it, directly to the surface of the material of the pad with a pin, or in any other manner which was practically useful, he would have had the right to do so under his patent of 1882; while his Canadian patent shows the use of a wire hook and spring fastened into the surface material of the pad by a pin; not a safety-pin, it is true, but by thrusting the pin into the ma-

terial of the pad substantially as is shown in the Scherling drawings, Nos. 2 and 5. But if I am wrong in this construction, I am satisfied that the defendants do not infringe the Scherling patent. The claim of that patent, in substance, is for a hook formed of wire, with a safety-pin integral with the hook for attaching the hook to the pad. (The claim says the pin is for the attachment of the hook to the collar, but this is evidently a mistake, and it was undoubtedly intended that the safety-pin should attach the hook to the pad.) The defendants do not use a pin integral with their hook for the purpose of fastening their hook to the pad; but the hook is fastened to a piece of leather in such manner as to give it an axial or rolling motion; and this leather is riveted to the pad by rivets passing through the material of the pad. In view of the patents to McClain, this Scherling patent must be confined to the special devices shown and claimed, and cannot be enlarged or expanded by construction, because hooks, both double and single, with which to fasten pads to collars, and performing the same function in the same way as is done by Scherling, were shown in the two McClain patents now in suit, and also in McClain's Canadian patent; and hence as the defendants do not use a safety-pin integral with their hook to attach their pads to the collars, they cannot be said to infringe the Scherling patent.

For these reasons, I conclude the complainant's bill must be dismissed for want of equity.